IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALICE BLUM, on behalf of                    CV 07-6027-MA
MDB, a minor child,

         Plaintiff,                    OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

         Defendant.

ALAN STUART GRAF
P.O. Box 98
Summertown, TN 38483
(931) 964-3127

         Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1 - OPINION AND ORDER

LEISA A. WOLF
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3621

      Attorneys for Defendant

MARSH, Judge.

     Plaintiff Alice Blum seeks judicial review of the final decision of the Commissioner denying her November 10, 2003, application on behalf of her son "MDB", a minor child, for Supplemental Security Income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381-83f.

     MDB was seven years old on the date of the final decision of the Commissioner.  Plaintiff claims MDB has been is disabled since birth because of poor muscle tone, poor balance, poor hand-eye coordination, severe calcaneovalgus (clubfoot), and ligament laxity.  The claim was denied initially and on reconsideration. The Administrative Law Judge (ALJ) held a hearing on May 31, 2006, and issued a decision that MDB was not disabled on September 8, 2006.  Plaintiff timely appealed the decision to the Appeals Council.  On December 5, 2006, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, became the final decision of the Commissioner for purposes of review.

     Plaintiff contends the ALJ's decision is not supported by

2 - OPINION AND ORDER

substantial evidence and seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits to MDB.

For the following reasons, the final decision of the Commissioner is **REVERSED** and **REMANDED** for payment of benefits.

### DISABILITY ANALYSIS FOR A MINOR CHILD

The Social Security Administration has developed a three-step sequential analysis to determine whether a minor child is eligible for SSI benefits on the basis of a disability. 20 C.F.R. § 416.924(a). First, the ALJ considers whether the child is engaged in substantial gainful activity. Id. at 416.924(b). Second, the ALJ considers whether the child has any medically determinable impairments that are severe, i.e., any impairments that cause more than minimal functional limitations. Id. at 416.924(c). Third, if the child has a severe impairment, the child is considered to be disabled only if the impairment medically equals or functionally equals a disability listed in the regulatory Listing of Impairments. Id. at § 416.924(c)-(d); Id. at Pt. 404, Subpt. P.

A child's impairment will be found to be functionally equivalent to a listed impairment if it results in extreme limitations in one area of the child's functioning or marked limitations in two areas. 20 C.F.R. § 416.926a(a). An extreme limitation interferes very seriously with a child's ability

to initiate, sustain, or complete activities independently.
20 C.F.R. § 416.926a(e)(3)(I), whereas a marked impairment
interferes seriously with the child's ability to initiate,
sustain, or complete activities independently.  20 C.F.R.
§ 416.926a(e)(20)(I).

The child's functioning is assessed in six domains.  The
first five determine the child's ability to acquire and use
information, to attend and complete tasks, to interact and relate
with others, to move about and manipulate objects, and to care
for himself.  The sixth domain considers the child's health and
physical well-being generally.  20 C.F.R.  416.926a(a)-(b)(2001).
To demonstrate functional equivalence, the child must exhibit a
marked limitation in two of the domains, or an extreme limitation
in one domain.  20 C.F.R. § 416.926a(e)(2)(I).

## THE ALJ'S DECISION

At Step One, the ALJ found MDB has not worked in substantial
gainful activity since the alleged onset of his disability.

At Step Two, the ALJ found MDB suffers from Ehlos-Danlos
Syndrome (EDS) and attention deficit hyperactivity disorder
(ADHD), which are severe impairments under 20 C.F.R. §416.924(c).

At Step Three, the ALJ found these impairments, either alone
or in combination, neither medically meet or equal nor
functionally meet a listed impairment.

Based on these findings, the ALJ found MDB is not disabled.

4 - OPINION AND ORDER

## LEGAL STANDARDS ON REVIEW

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

5 - OPINION AND ORDER

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in finding that MDB's impairments or combination of impairments do not medically meet or equal a listed impairment or, in the alternative, that they do not functionally meet or equal a listed impairment.

## RELEVANT RECORD

**A.    Hearing Testimony.**

**1.    Plaintiff.**

Plaintiff testified at a hearing held on May 31, 2006, in support of MDB's disability application.

Plaintiff's household includes her husband, her son MDB, and another son who is two years older than MDB and is autistic.

MDB is in first grade at a public elementary school.  He attends an "adaptive" physical education class once a week during which he does exercises to strengthen his muscles and "keep him safe."  He also participates in swimming exercises to tone his muscles.

6 – OPINION AND ORDER

MDB sees an orthopedic therapist once a week and a physical therapist three times a week. Once a year, he also sees a urologist and a hearing specialist. He has worn orthopedic braces in his shoes for 2 1/2 years, and will be receiving braces for his elbows. The braces help to prevent joint dislocations caused by EDS (loose joints, skin laxity, and weak tissue). The braces are needed because as MDB grows older, his elbows "pop out [of the socket] more" and he has "less control over those joints." The joints normally pop back in but the parents sometimes guide them back.

MDB uses a handrail to climb stairs. He complains that his legs hurt and get tired when he does a lot of walking or standing. He has difficulty running because he will fall down and he does not do well walking on gravel or bark dust. He is not able to play tag, crab walk, or lift objects such as volleyballs. He should not play any games where there is a possibility he will collide with someone else because of potential joint dislocation. When he runs on the track, he is followed by an aide with arms outspread to prevent such collisions.

MDB has a speech disorder that impedes his ability to articulate words. He gets along at school "pretty good" but he has tantrums and gets upset easily when other children say things in harmless fun that he construes as being mean or teasing. When

he is angry he will scream for 5-20 minutes and throw objects towards the source of his frustration.

MDB is not fully toilet-trained and has difficulty bathing because he does not like the sensation of water on his head and face.  He also has difficulty brushing his teeth, putting on his shoes, pulling his pants on, pulling his shirt over his head, snapping buttons, and using zippers.

MDB does occasionally clean his room but he tires easily. He has difficulty with organization.  He is unusually sensitive to sounds, smells, and texture.

MDB also suffers from ADHD and has been prescribed Ritalin. Because he is so active, constantly moving about, he is tired all the time.  He does not sit still in class, and when he is writing he will walk around the desk with his hand on the paper, and often going back and forth between the floor and his desk every two minutes or so.

He has difficulty paying attention and concentrating in class, and often will tune out the teacher.  He is not involved in what's going on in the classroom.

**2.    MDB.**

MDB is in first grade and likes school because he "get[s] to learn."  He likes to play on the swings and the slide.  The best part of school is lunch.

3.    **Robert Olson, M.D. - Consulting Pediatrician.**

Dr. Olson consults on social security disability cases involving children.  He reviewed medical records, listened to testimony, and gave his opinion as to MDB's infirmities.

MDB was born with benign hypermobile EDS, which is the least incapacitating of eight types of the syndrome.  EDS affects the collagen finders in the body that hold joints together, thereby interfering with coordination and the use of fingers, causing club foot and flat feet, and problems with elbows.  Professionals are afraid to let such a child be normal for fear of knee dislocations and early onset of degenerative arthritis.

MDB also has ADHD, but not severe enough to meet any Listing.  He has a disability in maintaining concentration, persistence, or pace.  He has a speech disorder that will resolve in time with therapy.  He has visual motor tracking problems that are improving.  None of MDB's problems singly, or in combination, meet or equal any Listing, either medically or functionally.

B.    **Medical Records.**

1.    **Medical Evaluation Records of Treatment/Therapy Providers**.

The following practitioners treated MDB or evaluated him for purposes of recommending further treatment and schooling:

(a)    Corvallis Family Medicine.

From March 2003 until July 2005, several physicians evaluated and treated MDB for a variety of symptoms, including

9 – OPINION AND ORDER

coughs, nasal sores, and fever.

In February 2004, as part of a five-year well-child check, Debra Roberts, M.D., assessed plaintiff as having developmental delays and gross motor delay.

A July 2005 genetic study showed MDB had the normal set of chromosomes.

(b)  Betty Capt, OTR - Occupational Therapist.
         Anna Vaughn, PT - Physical Therapist.

In October 2003, when MDB was almost five years old, these therapists evaluated his fine and gross motor skills and assessed the implications of any deficits as to his education needs in light of a "diagnosis of mild cerebral palsy."

As to his gross motor skills, they found MDB was able momentarily to walk, run, gallop, jump up, and balance on one foot.  He was able to move around the classroom and playground independently, but in a clumsy manner.  He occasionally tripped and fell on uneven surfaces.  There was clear evidence of low trunk tone and lax ligaments throughout his body.  "Balance is a likely issue with his coordination and achievement of more refined and difficult gross motors skills."  When MDB performed more difficult tasks, he tended to use his hands as a "high guard."

As to MDB's fine motor skills, these therapists found he had weakness in his hands and arms, and lax joints in his elbows, wrists, fingers, and thumbs.  His fine motor skills were

10- OPINION AND ORDER

delayed because of the hand weakness.  He was not much interested in writing or cutting, but did not refuse to engage in those activities.

The therapists concluded MDB "would benefit from consultation to his classroom to help teachers and other staff incorporate activities that will address his motor needs."

      (c)   Oregon Health & Science University (OHSU) Child Development and Rehabilitation Center.

From September 2003 through May 2006, OHSU provided ongoing evaluations and therapy recommendations, primarily regarding a diagnosis that MDB suffered from benign EDS, with ligamentous laxity, bilateral valgus (twisted) foot deformities, and gross motor delay relating to a developmental coordination disorder.

In September 2003, physicians and other specialists at OHSU examined MDB and diagnosed ligamentous laxity, low muscle tone, delayed gross motor skills, and motor coordination disorder/dyspraxia.

In February 2004, Kyran Carroll, M.S., a speech pathologist, evaluated MDB's speech and language development.  On testing, MDB scored in the average range for receptive and expressive language, with minor grammatical errors in expressive speech.  He was generally intelligible, but had a soft tone of voice and rapid speech rate.  He had a mild to moderately delayed

range for articulation.  He exhibited "red flags" as to tactile
sensitivity, literal understanding of language, and some social
difficulties.

        In July 2004, physical therapist Jan Lee, P.T.,
examined MDB and found he "demonstrates excessive [Passive Range
of Motion] at all joints.  The excessive ranges are in the severe
ranges, making long-term issues with alignment, stability, pain,
and arthritis."

        In March 2005, Lydia Fusetti, M.D., a developmental
physician, examined MDB, who was then six years old, and noted
he "is demonstrating significant ligamentous laxity, poor joint
stability, and hand weakness.  Fine motor delays present skills
in the 4 year age level."  She found MDB was "very distractible
and had difficulty focusing on testing today."  He also exhibited
"sensory processing difficulties . . . with tactile, auditory,
and temperature input."  A year later, Dr. Fusetti noted MDB was
doing "quite well in fine motors skills, but some difficulty with
visual motor control, likely due to attending skills.  His
handwriting shows inconsistency in sizing, spacing & formation,
with reversals, which affects legibility.  His biggest problem is
chronic subluxation of elbows when extending them."

        In August 2005, psychologist Walt Wood, Ph.D., assessed
MDB as meeting the minimal criteria for ADHD, and having mild

sensory issues and diminished social skill interest.  MDB has
"some features of autism or Asperger's," but Dr. Wood was
"reluctant to give this full diagnosis" based on the information
he had, because MDB did not have the "intensity of symptoms
across sensory, communication, and social domains typically seen
for youngsters displaying full Autism spectrum/Asperger's
criteria."

      (d)  <u>Old Mill Center</u>.

      MDB was evaluated and treated by multiple therapists at
the Old Mill Center from July 2003 until May 2006.  Initially,
MDB showed signs of mild ataxic cerebral palsy, based on delayed
initiation of movement, poor grading of agonist/antagonist
activity and decreased accuracy in terminating movement.  Muscle
strength and endurance appeared to be within functional limits,
but the time and consistency of muscle contractions were
insufficient for functional skills.  MDB's "most significant
deficits" were "balance, coordination and motor planning."

      In September 2003, therapists expressed concern in the
following domains: <u>self-help</u> (short-attention span, chewing on
toys, eating non-food items such as flowers, difficulty turning
on the tap to drink water, not eating much at a time, lack of
caution, <u>e.g.</u>, running into traffic, and lack of potty training);
<u>social/behavioral issues</u> (difficulties with other children, such

as not playing cooperatively, not sitting and attending during
large group activities unless they are physically active, not
taking turns, not negotiating, and withdrawing when around them.
He avoids physically difficult tasks, interrupts impolitely,
shows little awareness of property rights, and has difficulty
separating from his parents); gross motor skills (difficulty
maintaining balance on one foot, inability to walk on a taped
line, walking down stairs, clumsy running form, inability to hop
on one leg, lack of opposing arm and leg movements when kicking a
ball, inability to pedal a tricycle, poor prone extension and
supine flexion patterns, and decreased muscle tone/strength
throughout); and fine motor skills (switching hands while doing
fine motor activities, cutting with his thumb in the down rather
than up position, poor hand strength, low muscle tone in the
upper extremities, and failure to sit still).

        In December 2005, physical therapist Elizabeth Bolte
opined that "joint laxity most profoundly impacts MDB's motor
function and puts him at risk for joint instability and pain
later in life."  His activities at home and at school are
restricted to avoid harmful stress to the joints.  "He is not
allowed to hang from a bar, play contact sports, jump down from
heights, carry excessively heavy objects, or stand unsupervised
for prolonged periods."

14- OPINION AND ORDER

e.  <u>Mary Devine, P.T. - Physical Therapist</u>.

From April 2004-October 2005, physical therapist Mary Devine provided consultation services to the Corvallis School District regarding MDB's safe participation in the classroom and on the playground.  In May 2005, Devine noted that MDB "is at great risk for injuring himself by virtue of his lax joints." She noted there were "days when he was cooperative, happy, and willing to try," but "in regular PE I have observed [him] fold his arms, cry out in frustration and refuse to participate in an activity," particularly if directed by an adult.  In a September 2005 report, she cautioned school staff that MDB's activities should be monitored throughout the entire school day, in the classroom, in the playground, in the music room, in the lunch room, and during PE and adapted PE.  She also reminded the staff that MDB has "strength and endurance issues," and that, while the school should not "unduly restrict him," MDB should not engage or potentially engage in contact sports or high impact activities, hang from playground equipment, climb ropes, jump from heights, rough-house (tugging or pushing with other students), jump off swings, engage in field events or hurdling, or crab-walk.  He should be allowed bicycle, swim, run, swing, walk, and engage in non-contact sports.

15 - OPINION AND ORDER

**2.  Medical Evaluation Records of Non-Treatment Providers.**

The following practitioners evaluated treatment and therapy records on behalf of the Commissioner for purposes of determining the extent of MDB's alleged disability:

a.  <u>Martin Lahr, M.D. - Pediatrician</u>.

In March 2004, Dr. Lahr reviewed MDB's medical and therapy records on behalf of the Commissioner and concluded MDB has impairments relating to ligamentous laxity, delayed gross motor skills, and motor coordination disorder/dyspraxia, which either singly or in combination are severe but do not medically or functionally equal a Listing.  Dr. Lahr found MDB has "less than marked limitations" in four of the six relevant domains: Moving about and manipulating objects, caring for himself, attending and completing tasks, and interacting and relating with others.  Dr. Lahr concluded MDB had no limitations in two domains:  Acquiring and using information, and health and physical well-being (despite MDB's significant ligamentous laxity and low normal muscle tone, which affects his motor control).

b.  <u>Martin Kehrli, M.D. - Internist</u>.

In May 2004, Dr. Kehrli reviewed MDB's medical and therapy records on behalf of the Commissioner, and concluded he had less than marked limitations in every domain, stating "other than [MDB's] problems with ligamentous laxity, dyspraxia, and

gross motor delays, he is doing quite well."  Nevertheless,
Dr. Kehrli acknowledged MDB has issues caring for himself, in
that he dresses himself "with some help," is only "partially
potty trained," "is able to zipper his own jacket sometimes,
jeans a little difficult," and "needs new braces."

<u>**ANALYSIS**</u>

The issue is whether MDB has a severe impairment or
combination of impairments that medically or functionally equal a
listed impairment.

**A.    <u>Medically Equal Listed Impairment</u>.**

Plaintiff contends she presented sufficient evidence to
establish MDB suffers from an impairment (EDS) that medically
equals Listed Impairment 101.02:

> Major dysfunction of joint(s)(due to any
> cause):  Characterized by gross anatomical
> deformity (e.g. subluxation, contracture,
> bony or fibrous ankylosis, instability) and
> chronic joint pain and stiffness with signs
> of limitation of motion or other abnormal
> motion of the affected joint(s), and findings
> on appropriate medically acceptable imaging
> of joint space narrowing, bony destruction,
> or ankylosis of the affected joint(s).  With
>
> > A.   Involvement of one major peripheral
> > weight-bearing joint (i.e. hips, knee,
> > or ankle) resulting in inability to
> > ambulate effectively as defined in
> > 101.00B2b; or
> >
> > B.   Involvement of one major peripheral
> > joint in each upper extremity (i.e.,
> > shoulder, elbow, or wrist-hand),

17- OPINION AND ORDER

> resulting in inability to perform fine motor
> and gross movements effectively, as defined
> in 101.00B2.

20 C.F.R. pt. 404, subpt. P., app. 1, pt. B, Listing 101.02.

The ALJ found MDB suffers from EDS, which is a severe impairment. Nevertheless, he concluded MDB's condition did not medically meet Listed Impairment 101.02 because EDS is not specifically mentioned in any Listing and "no treating or examining source has assessed claimant as equaling the criteria of any Listing that could be considered related."

The Commissioner asserts the ALJ reached the correct conclusion that the "mere diagnosis of a listed impairment" is not sufficient to sustain a finding of disability unless it supported by "findings shown in the Listings for the impairment." The medical records, however, more than amply support a finding that, at a minimum, MDB suffers from a severe dysfunction of his joints, especially elbow joints, resulting in frequent subluxations (joint dislocation). In addition, there is substantial evidence his joint issues and hand weakness "profoundly" affect his motor skills, including writing and dressing himself.

On this record, the court finds there is substantial evidence to support a finding that MDB suffers from a severe impairment, EDS, that may medically equal a listed impairment.

18 - OPINION AND ORDER

At a minimum, there is considerable ambiguity in the record as to whether MDB's condition medically meets or equals a listed impairment.  The ALJ's rejection of such a finding in the absence of a specific medical opinion that MDB's impairment either met or did not meet the criteria for a listed impairment is flawed because the ALJ had the burden of developing the record.  He did not meet that burden in this case.

**B.  <u>Functionally Equal Listed Impairment</u>.**

There remains the issue as to whether, even if MDB's impairments did not medically equal a listed impairment, either singly, or in combination, they functionally equaled a listed impairment.

As noted, MDB is entitled to disability benefits if he has marked limitations in two of six domains.  The ALJ found he had a marked limitation in one domain - moving and manipulating objects.  He found MDB did not have marked limitations in the other five domains.  The only partial support for that finding in the record are the opinions of the Commissioner's consulting physicians, Dr. Lahr and Dr. Kehrli, who reviewed medical records and found MDB had no marked limitations in any domain.  The court finds neither the ALJ's finding nor the opinions of these physicians are supported by substantial evidence in the record.

A marked limitation in a domain arises from an impairment or combination of impairments that:

19 - OPINION AND ORDER

> interferes seriously with your ability to
> independently initiate, sustain, or complete
> activities. Your day-to-day functioning may
> be seriously limited when your impairment(s)
> limits only one activity or when the
> interactive and cumulative effects of your
> impairment(s) limit several activities.
> "Marked" limitation also means a limitation
> that is "more than moderate" but "less than
> extreme." It is the equivalent of the
> functioning we would expect to find on
> standardized testing with scores that are at
> least two, but less than three, standard
> deviations below the mean.

20 C.F.R. § 416.926a(e)(ii).

As noted, the six domains are: (1) Acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects, (5) caring for himself; and (6) the child's health and physical well-being generally.

The court finds the reports of the therapists who work with MDB on an ongoing basis establish that, in addition to MDB's marked limitation in moving and manipulating objects, he has, at the least, marked limitations in caring for himself, *i.e.,* bathing, brushing his teeth, dressing himself, putting on his shoes, and partial toilet-training, and generally, marked limitations as to his health and physical well-being based on the constant threat of joint dislocation.

Accordingly, on this record, the court finds there is substantial evidence in the record to support a finding that MDB has marked limitations in at least two of the six domains. The

20 - OPINION AND ORDER

court, therefore, concludes the ALJ erred in finding MDB is not disabled.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff on behalf of MDB is **REVERSED** and this matter is **REMANDED** for an immediate award and payment of benefits.

IT IS SO ORDERED.

DATED this 16 day of June, 2008.


    /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

21- OPINION AND ORDER